UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUONG HUY DAO,<br>　　　　Petitioner,<br>　　v.<br>KEVIN HIXON,<br>　　　　Respondent. | Case No. 19-cv-01074-WHO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Cuong Huy Dao seeks federal habeas relief from his California state conviction for assault with a deadly weapon. His *Brady* claim fails because the allegedly withheld evidence was not favorable to the defense and was disclosed in time for the defense to make use of it; his first claim of ineffective assistance cannot succeed because counsel's failure to request a jury instruction caused no prejudice in light of other instructions that conveyed the theory the omitted instruction contained; and his second claim of ineffective assistance cannot succeed because Dao has not presented supporting evidence to state a claim that the recording of his 911 call should have been admitted, and the recording of a witness's statement he believes should have been admitted was clearly unhelpful to his defense. Dao's petition for habeas relief is DENIED.

## BACKGROUND

In 2013, a Santa Clara County Superior Court jury convicted Dao of assault with a deadly weapon (Cal. Penal Code § 245(a)(1).[1] (Ans., State Appellate Opinion, Dkt. No. 19-4 at 127.) The jury also found that he had personally inflicted great bodily injury on the

---
[1] *People v. Dao*, No. H043015, 2017 WL 4115673, at *1 (Cal. Ct. App. Sept. 18, 2017).

victim and that he personally used a dangerous and deadly weapon in the commission the offense (Cal. Penal Code § 12022.7(a)). (*Id.*) The trial court found that Dao had a prior strike conviction and one prior serious felony conviction. (*Id.*) A sentence of sixteen years was imposed.

This federal habeas petition followed Dao's unsuccessful attempts to overturn his state convictions in state court. After respondent filed an answer, the action was stayed at Dao's request so that he could exhaust claims in state court. (Dkt. Nos. 18 and 24.) After the action was reopened and Dao filed an amended petition, respondent filed a supplemental answer and Dao filed a traverse. (Dkt. Nos. 35 and 36.)

The state appellate court summarized the facts as follows:

> At around 8:00 p.m. on July 22, 2013, Sukhjinder Singh and Gurminder Singh were working at Lion Liquors in San Jose. Sometime before 8:15 p.m., [Dao] entered the store and brought a 24-ounce can of AriZona tea to the counter. [Dao], who had given Sukhjinder a $10 bill, became angry because the price of the tea was $1.10 when other stores charged $1.04. Sukhjinder responded, 'It's okay. You can just give me a dollar.' [Dao] continued to argue with Sukhjinder. Sukhjinder felt threatened by [Dao] when [Dao] pointed at him and opened his jacket. Sukhjinder eventually placed the $10 bill on the counter near the can, told [Dao] that he was not going to sell him the tea, and asked him to leave the store. [Dao] slammed his fist on the counter and struck Sukhjinder's hand. Sukhjinder took the can as [Dao] continued to argue with him. After [Dao] spit on Sukhjinder, Sukhjinder threw the can as hard as he could at [Dao] and hit his head. [Dao] responded by picking up merchandise on the counter and throwing it at Sukhjinder. Meanwhile, Gurminder had grabbed a baseball bat and held it up to scare [Dao]. Gurminder also attempted to get [Dao] to leave by saying, 'Let's go, brother. Let's go, brother.'
>
> Sukhjinder grabbed the baseball bat from Gurminder, came out from behind the counter, and asked [Dao] to leave. Sukjhinder swung the bat and hit [Dao]. As Sukhjinder started to swing the bat again, [Dao] grabbed him. Both Sukjhinder and [Dao] held onto the bat and proceeded to scuffle. Gurminder continued to ask [Dao] to leave and eventually separated the two men. Escorted by Gurminder, [Dao] walked back towards the store exit. Sukhjinder walked to the front of the counter and turned away from the store exit. At that point, [Dao], who had been at the doorway, walked to where Sukhjinder was standing, and continued to argue with him. [Dao] poked his finger twice into Sukhjinder's chest. Sukhjinder took two or three steps

2

> backwards and knocked [Dao]'s hat off his head with his left hand. Sukhjinder was holding the bat in his right hand, but he did not raise it. [Dao] immediately responded by stabbing Sukhjinder multiple times.
>
> When Luz Langarcia [footnote omitted] entered the store, the altercation was already in progress. She saw [Dao] walk to the door with Gurminder and thought [Dao] was leaving. However, [Dao] returned after reaching the doorway. According to Langarcia, [Dao] 'kind of rushed' Sukhjinder. Before [Dao] stabbed Sukhjiner, Gurminder and Sukhjinder were telling him to leave the store. [Dao] remained at the location until the police arrived.

(Ans., State Appellate Opinion, Dkt. No. 19-4 at 128-129).

As grounds for federal habeas relief, Dao claims (i) the prosecutor failed to present evidence helpful to the defense; and (ii) defense counsel rendered ineffective assistance in various ways. (Second OSC, Dkt. No. 34 at 2; Am. Pet., Dkt. No. 29 at 5.)

**STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the

3

1  writ if the state court identifies the correct governing legal principle from [the] Court's
2  decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at
3  413. "[A] federal habeas court may not issue the writ simply because that court concludes
4  in its independent judgment that the relevant state court decision applied clearly
5  established federal law erroneously or incorrectly. Rather, that application must also be
6  unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application"
7  inquiry should ask whether the state court's application of clearly established federal law
8  was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### i. Prosecutor's Alleged Withholding of a Recording

Dao claims that the prosecutor withheld a recording of a police interview of witness Luz Langarcia, thereby violating his due process rights and the trial court's discovery order. (Am. Pet., Dkt. No. 29 at 5.) The facts underlying this claim are as follows. Langarcia was a customer who entered the liquor store as the fight between Dao and Sukhjinder and Gurminder was in progress. After Langarcia testified for the prosecution, the trial court discussed outside the presence of the jury defense counsel's intention to call her to testify. The defense at one time wanted her to testify that after the stabbing Dao "repeatedly made remarks such as call 911, call an ambulance, call the police, something like that. And the — the — I think that Ms. Langarcia would have said specifically, he repeatedly said, 'Someone call an ambulance,' something like that." (Ans., Reporter's Transcript, Dkt. No. 19-3 at 179-180.) The court said that it would admit Dao's statement, communicated by Langarcia, as a nonhearsay statement. (*Id.* at 180.)

Langarcia's statement had been recorded by a police officer, who uploaded the recording to the case file. (*Id.* at 180-181.) However, the recording did not appear in the system — possibly because it had not been uploaded properly — and neither the prosecution nor the defense was aware of it until after Langarcia testified; in fact, they found out about its existence on the same day. (*Id.*) The trial court declared that the violation of his discovery order was "unintentional" and that "I don't have any question in

4

my mind that neither side knew about this, and there was no bad faith on the part of the prosecutor in not procuring that tape and turning that over." (*Id.* at 181.)

The recording was unhelpful to the defense. According to the trial court, the recording made it seem that Dao was not "doing it in a compassionate way; but instead, he was doing [it] in a way to further taunt and berate the victim." (*Id.* at 182.) "I think the parties agree that the tape is not exculpatory, that's it's inculpatory." (*Id.*) Defense counsel agreed with the trial court that the recording would be "harmful to your case" if admitted into evidence. (*Id.*) In the end, the prosecution decided not to admit the recording or call Langarcia for further testimony. (*Id.*) Defense counsel, for reasons independent of the prosecutor's, decided not to call Langarcia or ask to have the recording admitted. (*Id.* at 182-187.)

Dao contends that the prosecutor violated his due process rights by failing to comply with (i) the court's discovery order and (ii) the obligation to hand over material evidence favorable to the accused as required by *Brady v. Maryland*, 373 U.S. 83 (1963).

Habeas relief is not warranted on these claims. First, violation of a state court's discovery order or a state discovery statute does not violate the Constitution. *Pulley v. Harris*, 465 U.S. 37, 41 (1989) ("A federal court may not issue the writ on the basis of a perceived error of state law."); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.") Second, there was no violation of *Brady* because the evidence was not favorable to the defense. The court and both parties agreed that the recording was harmful to the defense and helpful only to the prosecution. Furthermore, the recording was discovered in time for the defense to make use of it. *Hooper v. Shin*, 985 F.3d 594, 618-619 (9th Cir. 2021) (there is no clearly established law governing delayed *Brady* disclosures when the defense had the opportunity to use the evidence at trial).

This claim was presented only on collateral review to the state supreme court, which summarily denied it. (Ans., Dkt. No. 35-4 at 2.) When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must

5

conduct an independent review of the record to determine whether the state court decision is objectively unreasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This review is not de novo. "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

Upon an independent review of the record, I conclude that the state court's denial of the claim was not objectively unreasonable and is entitled to AEDPA deference. This claim is DENIED.

### ii. Ineffective Assistance of Counsel

Dao alleges that trial counsel rendered ineffective assistance by failing (a) to request that a jury instruction (CALCRIM No. 3470) include a passage on the antecedent assaults doctrine and (b) to move to admit the recordings of Dao's 911 call and Langarcia's statements. (Am. Pet., Dkt. No. 29 at 5.)

In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *Strickland v. Washington*, 466 U.S. 668, 687-68 (1984), "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Strickland*, 466 U.S. at 690). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors,

1  the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "The
2  likelihood of a different result must be substantial, not just conceivable." *Richter*, 562
3  U.S. at 112 (citing *Strickland*, 466 U.S. at 693).

4      AEDPA "erects a formidable barrier to federal habeas relief." *Burt v. Titlow*, 571
5  U.S. 12, 20 (2013). The barrier is even more formidable when seeking relief on an
6  ineffective assistance claim. "In fact, even if there is reason to think that counsel's
7  conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does
8  not reveal' that counsel took an approach that no competent lawyer would have chosen."
9  *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quoting *Titlow*, 571 U.S. at 23-24.)

10      The standards created by *Strickland* and § 2254(d) are "highly deferential."
11  *Strickland*, 466 U.S. at 689. "This analysis is 'doubly deferential' when, as here, a state
12  court has decided that counsel performed adequately." *Reeves*, 594 U.S. at 739; *accord*
13  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "[I]n reviewing the work of their peers,
14  federal judges must begin with the 'presumption that state courts know and follow the
15  law.'" *Reeves*, 141 S. Ct. at 2411 (quoting *Woodford v. Visciotti*, 537 U. S. 19, 24
16  (2002)). "[A] federal court may grant relief only if every 'fairminded juris[t]' would agree
17  that every reasonable lawyer would have made a different decision." *Id.* (quoting *Richter*,
18  562 U. S. at 101.) When § 2254(d) applies, "the question is not whether counsel's actions
19  were reasonable. The question is whether there is any reasonable argument that counsel
20  satisfied Strickland's deferential standard." *Richter*, 562 U.S. at 105.

21      **a.    Antecedent Threats Doctrine: CALCRIM No. 3470**

22      Dao's defense at trial was that he acted in self-defense. Dao claims that trial
23  counsel rendered ineffective assistance by failing to request a that jury instruction
24  (CALCRIM No. 3470, Right to Self-Defense or Defense of Another (Non-Homicide))
25  include a passage on the antecedent threats doctrine. (Am. Pet., Dkt. No. 29 at 5.)

26      The facts underlying this claim are as follows. The trial court gave the jury several
27  instructions on self-defense, including CALCRIM No. 3470, which in relevant part reads:

28

7

> The defendant acted in lawful self-defense if, one, the defendant reasonably believed that he was in imminent danger of suffering bodily injury; two, the defendant reasonably believed . . . that the immediate use of force was necessary to defend against that danger; and, three, the defendant used no more force than was reasonably necessary to defend against the danger.
>
> Belief in future harm is not sufficient no matter how great or how likely the harm is believed to be. The defendant must have believed . . . that there was imminent danger of bodily injury to himself. Defendant's belief must have been reasonable, and he must have acted because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. If the defendant used more force than was reasonable, the defendant did not act in lawful self[-]defense.
>
> . . . When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant, and consider what a reasonable person in a similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

(Ans., State Appellate Opinion, Dkt. No. 19-4 at 132.) Defense counsel agreed that the "modified version of CALCRIM No. 3470 . . . [as] given by the trial court was 'consistent with the defense theory in this case.' " (*Id.* at 132-33.)

The omitted portion of CALCRIM No. 3470 — the portion Dao believes should have been included — states: "If you find that _____ <insert name of victim> threatened or harmed the defendant [or others] in the past, you may consider that information in deciding whether the defendant's conduct and beliefs were reasonable." (*Id.* at 133.)

Dao's claim was rejected by the state appellate court on grounds that there was no prejudice, other instructions having "adequately covered the defense theory":

> Even assuming that trial counsel's performance was deficient, defendant has failed to show prejudice. The self-defense instructions given to the jury adequately covered the defense theory. In particular, the jury was instructed that '[w]hen deciding whether the defendant's beliefs were reasonable,' it was to 'consider all the circumstances as they were known to and appeared to the defendant, and [to] consider what a reasonable person in a similar situation with similar knowledge would have believed.' Trial counsel argued that these circumstances included Sukhjinder's throwing the can at defendant, hitting defendant with the bat, swinging the bat again,

> hitting defendant's face, and knocking off his hat, and defendant reacted defensively to this conduct. Based on the instructions given and trial counsel's argument, it is not reasonably probable that the result would have been more favorable to defendant if an instruction on antecedent threats or assaults had been given.

(*Id.* at 134.)

Habeas relief is not warranted here because the version of CALCRIM No. 3470 the jury heard conveyed Dao's self-defense theory. CALCRIM No. 3470 instructed the jurors to "consider all the circumstances as they were known to and appeared to the defendant," which would certainly include whether the victim threatened or harmed Dao. Because the given instructions reasonably conveyed the theory that the omitted instruction contained, there was not any prejudice. Dao has not shown that there is a reasonable probability that, absent the alleged errors, the factfinder would have had a reasonable doubt respecting guilt. The state appellate court's rejection of this claim was reasonable, and therefore is entitled to AEDPA deference. This claim is DENIED.

### b. Recordings

Dao claims that trial counsel rendered ineffective assistance by failing to introduce a recording of his 911 call and the taped statement of Langarcia. (Am. Pet., Dkt. No. 29 at 22, 25-26, 29.) This claim fails. The 911 call is not part of the record: the prosecutor moved before trial to exclude the call, but no details of the call appear in the record.[2] Dao has not provided a transcript. All he says is that he called 911 and said to the dispatcher that "(2) Asian Indian store clerks fought him." (*Id.* at 20.) Without a transcript of the call, there is nothing to support Dao's claim of ineffective assistance.

Also, all parties agreed with the trial court that Langarcia's recorded statement was of value only to the prosecution and would in fact be harmful to the defense. On this clear record, defense counsel's performance was not deficient and the failure to try to have the recording admitted cannot have resulted in prejudice.

These claims were presented on collateral review to the state supreme court, which

---

[2] Defense counsel opposed the motion, but admitted that the defense did not intend to introduce the call into evidence. (Ans., Reporter's Transcript, Dkt. No. at 8-9.)

9

1  summarily denied them.  Upon an independent review of the record, I conclude that the
2  state court's denial of these claims was not objectively unreasonable and is entitled to
3  AEDPA deference.  This claim is DENIED.

## CONCLUSION

The state court's adjudication of Dao's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, the petition is DENIED.

A certificate of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Dao may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** May 8, 2025



WILLIAM H. ORRICK
United States District Judge

10